UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHRISTOPHER DIMILLO,                )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          1:10-cv-00163-JAW
                                    )
TRAVELERS PROPERTY CASUALTY         )
COMPANY OF AMERICA,                 )
                                    )
            Defendant.              )

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

A condominium owner seeks to enforce coverage under a property insurance
policy purchased by his condominium association. Because he has not raised a
genuine issue of material fact as to whether he has standing to enforce the terms of
the policy, the Court grants the insurance company's motion for summary
judgment.

## I.      STATEMENT OF FACTS

### A.      Procedural Background

On March 31, 2010, Christopher DiMillo filed an amended complaint in
Cumberland County Superior Court seeking a judicial declaration that Travelers
Property Casualty Company of America (Travelers) is obligated to indemnify him
for damages to his condominium and to hold him harmless for all covered losses
under the Travelers policy that inured to his benefit; he also seeks damages against
Travelers for its failure to defend and indemnify him. *Notice of Removal* (Docket
#1) Attach. 2 (*Compl.*). On April 27, 2010, the action was removed to this Court.

*Notice of Removal.* On September 15, 2010, Travelers moved for summary judgment on the grounds that Mr. DiMillo lacks standing or capacity to prosecute his claims because he is not an insured under the policy. *Def. Travelers Property Casualty Company of America's Mot. for Summ. J.* (Docket # 14) (*Def.'s Mot.*). On October 6, 2010, Mr. DiMillo responded. *Pl.'s Opp'n. to Def.'s Mot. for Summ. J.* (Docket # 17) (*Pl.'s Opp'n*). On October 20, 2010, the Magistrate Judge granted Mr. DiMillo leave to file a supplemental response in recognition of "an ongoing discovery concern" between the parties. *Order* (Docket # 21). On November 16, 2010, Mr. DiMillo filed his supplemental response. *Pl.'s Supplemental Objection to Def.'s Mot. for Summ. J.* (Docket # 22) (*Pl.'s Supplemental Opp'n*). On November 24, 2010, Travelers replied. *Def. Travelers Property Casualty Company of America's Reply Mem. in Supp. of its Mot. for Summ. J.* (Docket # 25) (*Def.'s Reply*).

## B. Factual Background

Mr. DiMillo owns an individual condominium unit (condo) in the Mountainside Phase IX condominium project located at 2136 Crocker Mountain Road in Kingfield, Maine. *Def. Travelers Property Casualty Company of America's Statement of Undisputed Material Facts* ¶ 1 (Docket # 16) (DSMF); *Pl.'s Opp'n to Def.'s Statement of Material Facts* ¶ 1 (Docket # 18) (PODSMF). In the fall of 2009, Mr. DiMillo's condo suffered severe water damage. DSMF ¶ 2; PODSMF ¶ 2. The resulting repairs required Mr. Dimillo to strip the condo to its studs to remediate the damage. *Pl.'s Additional Material Facts* ¶ 8 (Docket # 18) (PAMF); *Def.*

*Travelers Property Casualty Company of America's Reply to Pl.'s Additional Statement of Facts* ¶ 8 (Docket # 26) (DRPAMF).

At the time of the incident, Mountainside Phase IX and Mountain Valley Property, Inc. maintained in force a Travelers property insurance policy (the policy). DSMF ¶ 3; PODSMF ¶ 3. Mountainside Phase IX is the condominium association (the Association) and Mountain Valley Property, Inc. (MVP) is the Association's property manager. PODSMF ¶ 3. The policy was a condominium PAC (property and casualty) policy effective January 1, 2009 through January 1, 2010. DSMF ¶ 4; PODSMF ¶ 4. The only named insured on the policy was "Mountainside Phase IX & Mountain Valley Property Inc.," and the insured premises were described as Crocker Mountain, Burnt Mountain, Bigelow Mountain, and Carrabasset Valley condominiums.[1] DSMF ¶ 5; PODSMF ¶ 5. After Mr. DiMillo sustained water

---

[1] Mr. DiMillo moves to strike this statement in his original statement of facts on the ground that the policy had not been authenticated by an affidavit. PODSMF ¶ 5. He also denied the fact, stating that Travelers had "yet to respond to discovery requests and thus Plaintiff had no way of knowing the verified terms of the insurance policy." *Id.*

On October 20, 2010, Travelers filed an unopposed motion to amend deadlines to respond to Mr. DiMillo's concern. *Unopposed Mot. to Amend Deadline* (Docket # 20). Travelers attached a proposed order, outlining a process to resolve the dispute. *Unopposed Mot. to Amend Deadline* Attach 1 (*Proposed Order*). In it, Travelers agreed to provide agreed-upon discovery to Mr. DiMillo and an affidavit authenticating the policy. *Id.* at 2. Mr. DiMillo was given an opportunity to file a supplemental response to the motion for summary judgment. *Id.* The Magistrate Judge granted Travelers' motion without objection and adopted its proposed procedure. *Order* (Docket # 21).

Pursuant to that procedure, Mr. DiMillo filed a supplemental response to the motion for summary judgment on November 16, 2010. *Pl.'s Supplemental Opp'n.* There, he states that he "removes his objection to the absence of testimony authenticating the policy." *Id.* at 1. However, he argues that because Travelers submitted the affidavit late, the Court should not consider it for the purposes of this motion. *Id.*

This is a perplexing objection, not in keeping with the spirit of the rules. If the Court cannot consider the underlying insurance policy in a coverage dispute, it cannot rule on the substance of the motion, and if the parties agree (as they seem to) about the proper contents of the policy, it would seem in the best interest of both parties to obtain a ruling on the merits, rather than attempt to deflect a resolution on procedural grounds.

damage to his condo, the Association attempted to assign to Mr. DiMillo its right to pursue Travelers for all claims associated with the incident.[2] PAMF ¶ 1; DRPAMF ¶ 1; *Pl.'s Supplemental Statement of Material Facts* ¶ 17 (Docket # 23) (PSSMF); *Def.'s Resp. to Pl.'s Supplemental Statement of Material Facts* ¶ 17 (Docket # 26) (DRPSSMF).

Mr. DiMillo is a member of the Association. PAMF ¶ 14; DRPAMF ¶ 14. The Association's bylaws require the Board of Directors to "obtain and maintain to the extent available in accordance with general business practices, insurance on the Condominium buildings and all other insurable improvements upon the land, including both but not limited to ***all of the*** units . . . ."[3] PAMF ¶ 15 (emphasis

Furthermore, Mr. DiMillo is asserting that he has coverage under the Travelers policy; Travelers says he has no standing. The Court is unclear how Mr. DiMillo gains an advantage by failing to place the policy at issue before the Court.

Finally, the Magistrate Judge addressed Mr. DiMillo's timeliness concern in her order extending the discovery deadline and granting him leave to file a supplemental response. *See Order*. Mr. DiMillo offers no substantive objection to the policy or denial of what Travelers stated the policy included in paragraph 5 of its statement of facts. Accordingly, the Court deems the fact is admitted.

[2] Mr. DiMillo's statement of fact states that the Association actually assigned him these rights, not that it attempted to do so. PAMF ¶ 1. Travelers moves to strike that statement because Travelers disputes the validity of the assignment and argues that whether the rights were actually assigned is a matter of law. DRPAMF ¶ 1. Travelers admits that the Association intended to assign its rights to Mr. Dimillo. *Id.* The Court agrees that the validity of the attempted assignment is a matter of law and therefore adjusts the statement to reflect that the Association attempted to assign its rights under the policy, and whether the assignment was effective is disputed.

[3] Travelers moved to strike paragraphs 15 through 18 of Mr. DiMillo's statement of additional facts on the grounds that they are irrelevant, include impermissible legal conclusions, and are not supported by the bylaw provisions in the record. In reviewing the record, the Court noted that Mr. DiMillo omitted pages 13 through 15 of the bylaws, which purportedly contained the supporting language. Sensing that the omission was inadvertent and preferring to reach the merits of the motion, the Court held a May 25, 2011 telephone conference with counsel to determine whether there was a genuine dispute as to the content of the bylaws. On June 1, 2011, counsel informed the Court during a follow-up telephone conference that there did not appear to be a dispute. The Court granted Mr. DiMillo leave to submit the complete bylaws and granted Travelers an opportunity to object to the submission. That afternoon, Mr. DiMillo submitted the complete bylaws in a supplemental filing. *Notice of Supplemental Filing* (Docket # 32) Attach. 1 (*Bylaws*). Travelers did not object, and if it had, the Court would have overruled it. The complete bylaws support the quotations in Mr. DiMillo's statement of additional facts. Nevertheless, neither the bylaws, nor the

provided by Mr. DiMillo); DRPAMF ¶ 15. A certificate of insurance was to be issued to each unit owner, showing the relative amount of insurance covering each unit. PAMF ¶ 15; DRPAMF ¶ 15. The insurance is paid for through the common expenses, which are paid by each unit owner. PAMF ¶ 15; DRPAMF ¶ 15.

When Mr. DiMillo bought his condo in 2002, representatives of MVP told him he only needed to buy a "contents" policy as the Association had purchased a policy for all other losses.[4] PAMF ¶¶ 6-7; DRPAMF ¶¶ 6-7. Based on this representation, Mr. DiMillo bought a "contents-only" policy and no other insurance. PAMF ¶ 13; DRPAMF ¶ 13. After the damage to Mr. DiMillo's condo, Cindy Hammond, a representative from the Association, told him that the Association and its insurer would "take care of" the damage to the condo.[5] PAMF ¶ 9; DRPAMF ¶ 9. The Association thought that the policy covered the damage to Mr. DiMillo's condo. PSSMF ¶ 18; DRPSSMF ¶ 18. It brought a claim for damages to Mr. DiMillo's condo under the policy, and Travelers denied that claim on October 7, 2009. DSMF ¶ 6; PODSMF ¶ 6.

## C.  Previous Claims

---

other cited portions of the record supports Mr. DiMillo's conclusory statements in paragraphs 16 through 18 of his statement of additional facts. The Court disregards those statements.

[4] Travelers moves to strike as irrelevant statements regarding Mr. DiMillo's and the Association's perception of the extent of insurance coverage. The Court denies that request. For purposes of this motion, the Court must view the facts in the light most favorable to Mr. DiMillo, and Mr. DiMillo's defenses to summary judgment require the Court to consider the circumstances surrounding the policy. Since the contested statements may be probative of the Association's subjective intent, it is potentially relevant to this motion.

[5] Travelers moves to strike this statement on the grounds that it is irrelevant "to an analysis of the contract between the Association and Travelers to determine whether Plaintiff has standing to sue." DRPAMF ¶ 9. The Court finds it relevant to Mr. DiMillo's opposition to summary judgment, and denies Travelers' motion to strike.

In 2006, Travelers paid a claim under a previous iteration of this same Travelers policy.[6] PSSMF ¶ 1; DRPSSMF ¶ 1. The underlying claim was for water damage caused by a running toilet on the second floor, possibly due to a defective valve. PSSMF ¶ 2; DRPSSMF ¶ 2. Travelers paid $29,971.32 on that claim for the water damage and covered "replacement costs" of "building and contents." PSSMF ¶ 3; DRPSSMF ¶ 3. Similarly, in 2010, Travelers paid a claim under the policy for water damage to the unit located at 2174 Bigelow Road, unit 9, also in the Association. PSSMF ¶ 4; DRPSSMF ¶ 4. The claim was for water damage caused by an outside drain clogging and causing "water backup." PSSMF ¶ 5; DRPSSMF ¶ 5. Travelers paid $3,188.89 on that claim for water damage and covered "replacement costs" and "building and contents." PSSMF ¶ 6; DRPSSMF ¶ 6.

In at least one annual policy, the underwriting documents referenced the interior of individual units. PSSMF ¶¶ 14-16; DRPSSMF ¶¶ 14-16. In 2005, a Travelers representative visited Maine to determine the extent of coverage for the property under the "General Liability and Property coverages" policy. PSSMF ¶ 14; DRPSSMF ¶ 14. Travelers' March 2005 "Commercial Building Valuation Report" did not limit valuation to the exterior portion of the property at 2135 and 2136 Crocker; it valued the interior at $68,649. PSSMF ¶ 16; DRPSSMF ¶ 16. In its 2005 "Risk Assessment Report," Travelers listed certain risks to the interior of the

---

[6] Paragraphs 1 through 16 of Mr. DiMillo's Supplemental Statement of Material Facts refer to information in Travelers' underwriting files for policies other than the policy at issue here. Specifically, the files contain information concerning property insurance policies between Travelers and the Association for years other than 2009. Travelers moves to strike each paragraph as irrelevant. Generally, the Court denies these motions. Mr. DiMillo's defenses to this motion make relevant the circumstances surrounding the Association's insurance purchases, Travelers' underwriting practices, and Travelers' handling of similar claims.

property as risks it must assess in determining policy limits. PSSMF ¶ 16; DRPSSMF ¶ 16.

The underwriting file for previous iterations of the policy further made some references to individual condominium units. PSSMF ¶¶ 8-13; DRPSSMF ¶ 8-13. For example, Travelers permitted mortgagees of individual units to be added as "additional insureds" on the Association's annual policies of insurance. PSSMF ¶ 8; DRPSSMF ¶ 8. In 2006, Travelers discussed applying a credit for interior sprinkler systems on the property. PSSMF ¶ 10; DRPSSMF ¶ 10. The Underwriting Analysis for that year described the covered property as "14 [buildings] with 1-4 units each totaling 40 units" with "hardwired smoke detectors." PSSMF ¶ 11; DRPSSMF ¶ 11. The Statement of Value for that year valued the property at 2135 and 2136 Crocker at $317,304.00. PSSMF ¶ 12; DRPSSMF ¶ 12. It valued the personal property at 2135 and 2136 Crocker at $1,000. PSSMF ¶ 13; DRPSSMF ¶ 13. In 2008, Travelers calculated a policy limit of $548,872.00 on the property at 2135 and 2136 Crocker. PSSMF ¶ 9; DRPSSMF ¶ 9.

### D. The Parties' Contentions

#### 1. Travelers' Motion

Travelers contends it is entitled to summary judgment "on the ground that [Mr. DiMillo] lacks standing or capacity to prosecute his claims because he is not an insured under the policy." *Def.'s Mot.* at 2. Travelers argues that the policy "was a contract of insurance with the Association and not with [Mr. DiMillo]." *Id.* at 4. It says that the Association is an entity separate from Mr. DiMillo, that the relevant

provisions of the insurance policy are solely between the Association and Travelers, and that the insurance contract did not impose any obligations on Mr. DiMillo or vest any rights in him. *Id.* It contends that all of this is unambiguous from the language of the policy. *Id.* at 5. To emphasize the lack of ambiguity, Travelers cites policy language providing that where property damage is covered by the policy, "any claim for loss must be made by the Named Insured." *Id.* at 6.

Travelers asserts that since Mr. DiMillo is not a party to the policy he "has no basis to sue to enforce the contract." *Id.* It states that there is no "cogent reason" the Court should disregard the separate identities of Mr. DiMillo and the Association. *Id.* at 7. It argues that, instead, a suit against the Association is "the appropriate route for [Mr. DiMillo] to object to the claims handling by the Association and its insurer." *Id.*

## 2. Mr. DiMillo's Response and Supplemental Response

Mr. DiMillo responds that he has standing to bring this suit "under an array of legal theories." *Pl.'s Opp'n.* at 1. He first contends that he has standing because the Association "assigned its right to pursue [Travelers] for covered damages." *Id.* at 4. He asserts that the "assignment was signed by an Association official authorized to enter into such agreements and specifically gives [Mr. DiMillo] its rights against [Travelers]." *Id.* He argues that "[a]n assignee of claims 'has standing to pursue the assignor's claims' for money owed." *Id.* (quoting *Sprint Commc'ns. Co. LP v. APCC Servs., Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 2535-2541 (2008)). Mr. DiMillo observes that Travelers does not dispute that the Association

had a policy in force at the time of the damage. *Id.* at 5. He reasons that the assignment transferred the Association's rights under that policy to him, giving him standing to sue under the policy. *Id.*

Mr. DiMillo's second theory is that the Maine Condominium Act (MCA), 33 M.R.S. § 1601-101 *et seq.*, grants him standing. *Id.* He states that the MCA applies to all condominiums in the state, requires condominium associations to buy certain property insurance for their members, and makes every individual unit owner an insured person under such policies. *Id.* at 5-6. Mr. DiMillo notes that he is a member of the Association and argues that the "policy at issue here is a condominium policy, which is the Association's attempt to comply with the statutory strictures." *Id.* at 6. He reasons that he is thus a named insured by statute, defeating Travelers' motion for summary judgment. *Id.* at 6.

Mr. DiMillo's third theory is that he is an intended third party beneficiary of the policy. He argues that "[i]f the signatories to a contract so intend, a third party can enforce the contract against the signatory so obligated." *Id.* (quoting *Motorsports Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002)). Mr. DiMillo cites the Association's bylaws to argue that the Association has authority to enter into contracts on behalf of its members and must use that authority to insure all units as required by the bylaws. *Id.* at 7. He asserts that the bylaws require that such insurance be "paid for through the common expenses that are drawn from each unit owner." *Id.* He contends that the Association purchased the policy in an attempt to fulfill its obligations under the bylaws. *Id.* He argues that "the policy

specifically covered all units, including the Condo here," and that "[a] certificate of insurance on the policy was to be given to [Mr. DiMillo], naming him as an insured and showing the amount of coverage specifically afforded to the Condo." *Id.*

Moreover, Mr. DiMillo assigns significance to facts in the underwriting file for the past several years of policies between Travelers and the Association. He asserts that the file "contains no references to limited coverage, coverage only for Association-owned elements, or exclusions for portions of the premises owned by individual unit owners." *Pl.'s Supplemental Opp'n* at 3. He cites numerous references to the interior portions of individual condominium units in the underwriting file and contends that if the policy "only insured the Association, it would have no concern for or interest in the internal portions of the unit." *Id.* Mr. DiMillo asserts that because previous iterations of the policy covered both the internal and external portions of the individual units, "those with interests in individual units were third party beneficiaries" of the policy. *Id.* at 4. As such, he argues that he is "clearly an intended third party beneficiary." *Pl.'s Opp'n* at 7.

Mr. DiMillo's fourth theory is that Travelers is estopped from denying him standing. *Id.* at 8. He asserts that Travelers has covered losses from water damage to other units in his condominium project in the past. *Id.* He further states that "[t]here is no evidence of any major changes" from the policies that covered those losses to the policy at issue here. *Pl.'s Supplemental Opp'n* at 9. Mr. DiMillo argues that by providing coverage for similar losses, Travelers "admitted that claims for

water losses due to toilet failures are covered events"[7] and "admits that individual unit owners . . . may seek . . . coverage for these losses." *Pl.'s Opp'n* at 8. Mr. DiMillo cites no law to support this theory.[8] *See Id.* and *Pl.'s Supplemental Opp'n.* at 5-7.

### 3. Travelers' Reply

Travelers addresses each of Mr. DiMillo's theories. *Def.'s Reply*. It first asserts that the Association "may not assign its rights under the policy." *Id.* at 2. It argues that the "express term[s] of the insurance contract prohibit[] any such assignment." *Id.* It quotes the following policy language:

> F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY
>
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

*Id.* at 2-3 (quoting *Travelers Policy* at 0011 (Docket # 15)). Travelers contends that "[t]his type of 'no assignment' provision is valid and enforceable in Maine." *Id.* at 3 (citing *Int'l Wood Co. v. Nat'l Assur. Co. of Ireland*, 59 A. 544, 545 (Me. 1904)). It further contends that 24-A M.R.S. § 2420 "explicitly permits clauses prohibiting assignment." *Id.* Travelers asserts that the policy expressly prohibits assignment without consent, "and no such consent was obtained." *Id.*

---

[7] Nowhere in Mr. DiMillo's complaint or statements of material facts does he state that the losses to his condo were caused by a toilet failure.

[8] Mr. Dimillo asserted two additional theories to defeat summary judgment in his original opposition. *Pl.'s Opp'n* at 8-12. Both theories arose from Travelers' alleged failure to produce sufficient documentation during discovery. *Id.* The discovery issues were resolved by consent of the parties and order of the Magistrate Judge. *Order*. Accordingly, Mr. Dimillo abandoned these theories in his supplemental opposition, *Pl.'s Supplemental Opp'n*, and the Court does not consider them.

Travelers next argues that the MCA does not grant Mr. DiMillo standing. *Id.* It contends that the MCA requires that individual condominium association members be insured persons under the association's liability insurance coverage but not under its property insurance coverage. *Id.* at 3-4. Travelers asserts that the policy addresses the Maine statute and provides for the requisite liability coverage. *Id.* Travelers cites the liability portion of the policy to point out that it expressly names individual unit-owners as insureds, "*but only with respect to that person's liability* arising out of the ownership, maintenance, or repair of that portion of the premises which is not owned solely by the unit-owner or out of that person's membership in the association." *Id.* (quoting *Travelers Policy* Attach. 2 at 0059) (emphasis added in Travelers' brief). Travelers argues that Mr. DiMillo's contention that the MCA gives him standing under the policy is rooted in his "failure to distinguish between liability and property insurance" in the statutory language. *Id.* Travelers further contends that this Maine-specific portion of the policy "highlights the fact that unit owners are not universally contemplated as insureds under the policy, for if they were there would be no need of a provision detailing this particular narrow coverage." *Id.*

Travelers turns to Mr. DiMillo's third party beneficiary argument. *Id.* It says that whether Mr. DiMillo is a third party beneficiary depends on Travelers' intent. *Id.* at 4-5 (citing *Devine v. Roche*, 659 A.2d 868, 870 (Me. 1995)). It asserts that for Mr. DiMillo to be an intended beneficiary, "the intent to benefit [Mr. DiMillo] 'must be clear and definite' on the part of the contracting parties." *Id.* at 5

(quoting *Devine*, 659 A.2d at 870). Otherwise, Travelers maintains, any benefit enjoyed by Mr. DiMillo as a result of the contract "renders him a mere incidental beneficiary," without standing to sue to enforce the policy. *Id.* Travelers contends that the Maine Supreme Judicial Court addressed this situation in *F.O. Bailey Co., Inc. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me. 1992), and "held that individual condominium owners were not third-party beneficiaries of a contract entered into by the owner of their condo building, even though they benefited from the contract." *Id.* Travelers asserts that there is no indication "in the plain language of the policy" that the parties intended Mr. DiMillo to be a third-party beneficiary of the policy and it argues that the facts Mr. DiMillo extracts from the underwriting file "do not support his contention that the policy contemplates the unit owners as anything more than incidental beneficiaries." *Id.*

Finally, Travelers asserts that estoppel is not a bar to summary judgment because "prior coverage determinations are irrelevant to [Mr. DiMillo]'s standing." *Id.* Travelers argues that, as a general rule, estoppel cannot expand the coverage of an insurance policy or create a contract of insurance where none existed. *Id.* It says that the only exception to this general rule in Maine "is that 'an insurer may be estopped from denying coverage when the party claiming coverage has demonstrated (1) unreasonable conduct of the insurer that misleads the insured concerning the scope of his coverage and (2) justifiable and detrimental reliance by the insured upon the insurer's conduct." *Id.* (quoting *Maine Mut. Fire Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996)). Travelers contends that Mr. DiMillo has

presented no evidence of these elements. *Id.* at 7. Travelers maintains that its determination of other claims under the Association's 2006 and 2010 policies has no bearing on Mr. DiMillo's standing or whether his losses are covered by the 2009 policy.

## II.    DISCUSSION[9]

### A.    Scope of Analysis

Travelers' motion is grounded exclusively on the premise that Mr. DiMillo is not a party to the policy and therefore does not have standing to enforce its terms. *Def.'s Mot.* Under Maine law, contracts generally do not grant enforceable rights to non-signatories. *See Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 11, 745 A.2d 975, 979; *Sturtevant v. Town of Winthrop*, 1999 ME 84, 732 A.3d 264; *Amburgey v. Atomic Ski USA, Inc.*, Civil No. 06-149-P-S, 2007 WL 4468707, at *5-6 (D. Me. Dec. 17, 2007), *aff'd*, 2008 WL 248637 (D. Me. Jan. 29, 2008). The Court limits its analysis to determining whether Mr. DiMillo has standing to enforce the terms of the policy. The Court does not consider the merits of the claims in Mr. DiMillo's Complaint or the merits of any underlying claims that have been or may be brought under the policy for damage to his condo.

---

[9] The parties apparently agree that Maine law governs the interpretation of the policy in this case. In its motion for summary judgment, Travelers cites law from California, Oklahoma, and Washington, D.C. *See Def.'s Mot.* In his response and supplemental response, Mr. DiMillo supports his substantive contractual claims with only Maine law and common law authority. *See Pl.'s Opp'n* and *Pl.'s Supplemental Opp'n.* Further, he argues that the Court should disregard Travelers' reliance on "extra-jurisdictional precedent." *Pl.'s Opp'n* at 5. Seeming to take Mr. DiMillo's cue, Travelers relies exclusively on Maine statutory and case law, a Restatement provision adopted by Maine courts, and a legal treatise to support the arguments in its reply. *See Def.'s Reply.* Neither party has asserted that a state's law other than Maine's should govern. Nor has either party provided the Court with information that would enable a choice-of-law analysis. Accordingly, the Court accepts the parties' implicit agreement that Maine law governs the substantive claims in this motion.

## B.     Legal Standard

A party moving for summary judgment is entitled to judgment in its favor only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if its resolution "might affect the outcome of the suit under the governing law." *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006) (quoting *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218–19 (1st Cir. 2004)). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Seaboard Sur. Co.*, 370 F.3d at 218–19). The Court views "all facts and reasonable inferences therefrom in the light most favorable to [Mr. DiMillo], the nonmoving party." *White v. R.M. Packer Co.*, 635 F.3d 571, 575 (1st Cir. 2011). "When a contract is unambiguous, the trial court may decide an issue pertaining thereto by summary judgment." *Fowler v. Boise Cascade Corp.*, 948 F.2d 49, 54 (1st. Cir. 1991).

Under Maine law, whether a contract is ambiguous is a question of law. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993. "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Id.* (quoting *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)). If the Court determines "that the contract is unambiguous, then its interpretation is also a question of law." *Id.* (citing *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515, 517). However, if the Court determines that the contract is ambiguous, "its interpretation is a question of fact

for the factfinder." *Id.* (quoting *Buck*, 2000 ME 154, ¶ 8, 756 A.2d at 517). Furthermore, pursuant to a "long-standing rule" in Maine, whether an insurance contract is ambiguous requires an evaluation of the instrument as a whole:

> A contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others.

*Id.* (quoting *Peerless Inc. Co. v. Brennon*, 564 A.2d 383, 384-85 (Me. 1989)).

## C. Policy Language

Mr. DiMillo has not directed the Court to any ambiguity in the 137-page insurance policy. The policy contains declarations, Common Policy Conditions, a Businessowners Property Coverage Part, a Commercial General Liability Coverage Part, and various endorsements that modify the other portions. The Common Policy Declarations list "Mountainside Phase IX & Mountain Valley Property Inc." and no other entities as the "Named Insured." *Travelers Policy* at 0002. Mr. DiMillo acknowledges that Mountainside Phase IX is the condo association and that Mountain Valley Property, Inc. is "the management company charged with maintaining the Condo." PODSMF ¶ 3. Although the policy designates unit owners as named insureds for purposes of liability coverage, Mr. DiMillo does not allege the policy lists him or refers to him as an insured or owner for purposes of property coverage.[10] As such, nothing on the face of the insurance agreement between

---

[10] An endorsement in the policies designates unit owners as named insureds with respect to liability coverage. *Travelers Policy* Attach. 2 at 0059. Mr. DiMillo's claim is based on property damage coverage, *Compl* ¶ 22, and he does not allege that the designation of unit owners as named insureds

Travelers and the Association confers standing on Mr. DiMillo to bring this action for property coverage under the insurance contract. The Court turns to Mr. DiMillo's other theories.

## D.  Assignment

Under Maine law, signatories to insurance policies are free to choose whether their rights and obligations are assignable. 24-A M.R.S. section 2420(1) provides that "[a] policy may be assignable or not assignable, as provided or permitted by its terms." This statutory language is plain enough: an insurer is permitted to forbid an insured from assigning its policy.

Perhaps because the statutory language is unmistakable, there is no recent case law on the issue. Tellingly, the parties cite only one Maine case dating back to 1904. *See Def.'s Reply* at 3, (citing *Int'l Wood Co. v. Nat'l Assurance Co.*, 99 Me. 415, 417, 59 A. 544, 545 (1904)).[11] *International Wood*'s conclusion tracks section 2420(1). *Id.* Maine statutory and case law is also consistent with the general rule elsewhere; Couch on Insurance states that "[a]n insurer may by the contract of insurance impose conditions upon the assignment of its policies." 3 COUCH ON INS. § 35:1 (2010). Accordingly, the Court turns to the language of the policy to determine whether the parties intended to impose conditions upon assignment.

The Common Policy Conditions, which apply to all Coverage Parts in the policy, include Subsection F, "TRANSFER OF YOUR RIGHTS AND DUTIES

---

in the liability portion of the policy grants him standing to bring this action. Therefore, that designation does not raise a genuine issue of material fact for purposes of this motion.

[11] On this point, Maine law enjoys an historic lineage. *International Wood* cited *Waterhouse v. Gloucester*, 69 Me. 409 (1879), which in turned cited *Pollard v. Somerset Mut. Fire Ins. Co.*, 42 Me. 221 (1856).

UNDER THIS POLICY." *Travelers Policy* at 0010-0011. Subsection F provides that "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." *Id.* at 0011. Clarifying the meaning of those pronouns, the policy provides that "Throughout the policy, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to the Company providing this insurance." *Id.* at 0018. The "Common Policy Declarations" list the "Named Insured" as "Mountainside Phase IX & Mountain Valley Property Inc." *Id.* at 0002. Reading these provisions together, *see Am. Prot. Ins.*, 2003 ME 6 ¶ 11, 814 A.2d 989, 993, it is unambiguous that the Association and MVP cannot transfer their rights and duties under the policy without Travelers' written consent.

Mr. DiMillo has failed to respond to Travelers' argument on this point. He has not addressed the non-assignment clause in the policy, the Maine statute, Maine case law, and he has therefore waived objection. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned") (internal punctuation and citations omitted).[12] Furthermore, under Maine law, a person claiming contractual rights as an assignee has the "the burden of proof on the issue of assignment." *Sturtevant*, 1999 ME 84, ¶ 10, 732 A.3d 264, 267. Here, there is no suggestion in this record that Travelers

---

[12] Mr. DiMillo cites *Sprint Commc'ns Co., LP v. APPCC Servs.*, 554 U.S. 269, 128 S. Ct. 2531, 2542 (2008) for the proposition that an assignee "unequivocally" has standing. The Court has no quarrel with that general proposition but the preliminary question is whether the policy is assignable to begin with.

assigned any contractual rights to Mr. DiMillo or consented to the Association's assignment to Mr. DiMillo. Even in the context of a motion for summary judgment, where the Court is required to view the facts in the light most favorable to the non-movant, once Travelers asserted the absence of a Travelers' assignment or its consent to the Association assignment, Mr. DiMillo must produce some evidence to sustain his burden of proof. *See Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010) (stating that in a summary judgment motion, the non-moving party must "with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor. As a general rule, that requires the production of evidence that is significantly probative." (internal citations omitted)). He has not. On this record, absent some probative evidence of a cognizable assignment, Mr. Dimillo has failed to create a genuine issue of material fact as to whether he has standing to enforce the policy under his assignment theory.

### E. Maine Condominium Act

Mr. DiMillo's statutory argument—that the MCA grants him standing to claim property coverage under the Travelers policy—misses the mark. The MCA provides that condominium associations in Maine "shall maintain, to the extent reasonably available" certain "property insurance" and "liability insurance." 33 M.R.S. § 1603-113(a). It further provides that "Insurance policies carried pursuant to subsection (a) must provide that: (1) "Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided

interest in the common elements or membership in the association." 33 M.R.S. §
1603-113(d).

The Travelers policy complies with this statutory requirement. The policy
contains an endorsement identifying unit owners as named insureds "but only with
respect to that person's liability arising out of the ownership, maintenance, or
repair of that portion of the premises which is not owned solely by the unit-owner or
out of that person's membership in the association." *Def.'s Reply* at 4 (quoting
*Travelers Policy* Attach. 2 0059). That clause closely parallels the language in
section 1603-113(d)(1), and Travelers contends that the clause was added to address
the requirements in the MCA. *Id.* Consistent with the MCA, the clause designates
unit owners named insureds with respect to liability. Under the terms of Travelers
policy, if Mr. DiMillo were seeking to enforce liability coverage, under the statute
and the express language of the policy, he would likely have standing.

But Mr. DiMillo is not seeking to enforce the liability coverage of the policy.
He is seeking property coverage. The Maine statute does not require that the condo
insurer provide property coverage to the unit owners, and the Travelers policy does
not make them named insureds with respect to property coverage. Because Mr.
DiMillo's cause of action arises from a purportedly "covered property damage claim
under the policy," *Compl.* ¶ 22, and makes no mention of liability, the MCA does not
grant Mr. DiMillo standing to bring his claim.

Finally, Mr. DiMillo does not explain why the Association's failure to
purchase insurance required by the MCA would give Mr. DiMillo a claim against

the insurer for coverage the Association did not purchase. Section 1603-113 makes condominium associations responsible for obtaining adequate insurance "to the extent reasonably available." Although Maine occasionally requires insurers to provide specific types of coverage in order to issue a policy in the state, *see* 24-A M.R.S. § 3002, the Court is unaware of any Maine law mandating that to insure a condo association, an insurer must provide property coverage for the unit owners. Instead, the provision of property coverage is a matter between the condo association and the insurer, and Mr. DiMillo's discontent with the scope of the coverage the Association purchased should be directed to the purchaser, not the provider of insurance.

### F. Third Party Beneficiary

#### 1. Third Party Beneficiary Law in Maine

Maine has adopted section 302 of the Restatement (Second) of Contracts to determine whether a person is a third party beneficiary. *Perkins v. Blake*, 2004 ME 86, ¶ 8, 853 A.2d 752, 754-755. (citing *F.O. Bailey*, 603 A.2d at 468); *Thompson v. Miles*, 741 F. Supp. 2d 296, 306 (D. Me. 2010). Section 302 provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981).

To prove third party beneficiary status, Mr. DiMillo must generally demonstrate that recognition of his right to enforce the policy "is appropriate to effectuate the intention of the parties." *Perkins*, 2004 ME 86 ¶ 9, 853 A.2d, 752, 755; *see also Amburgey*, 2007 WL 4468707, at *6-8 (analyzing the intention of both promisor and promisee in determining whether ski equipment manufacturer was intended beneficiary of Rental/Release Agreement between skier and rental shop).

More specifically, Mr. DiMillo must demonstrate "the promisee, [the Association], intended to give [him] the benefit of performance." *F.O. Bailey*, 603 A.2d at 468. In the words of the Maine Law Court, "[i]n order to proceed as third party beneficiaries on a contract theory, plaintiffs must generate a genuine issue of material fact on the issue of [the promisee's] intent that they receive an enforceable benefit under the contract." *Id.* The *F.O Bailey* Court directs that "[s]uch an intention is gathered from language of the written instruments and the circumstances under which they were executed." *Id.* "The intent must be clear and definite." *Id.* Moreover, it is not enough that Mr. DiMillo may have benefitted incidentally from the policy; "[a]n incidental beneficiary cannot sue to enforce third party beneficiary rights." *Id.*

## 2.    The Insurance Policy

The Court begins with the language of the contract. *Devine v. Roche Biomedical Laboratories*, 659 A.2d 868, 870 (Me. 1995) (concluding first that "[n]o language in the contract indicates BIW's intent to benefit third parties"). Mr. DiMillo has pointed to no language in the policy that creates a genuine issue as to

whether the Association intended to grant an enforceable benefit to Mr. DiMillo. The policy does not mention Mr. DiMillo by name. The liability portion of the policy designates "unit owners" as insureds but does not identify them by name, unit number, or other personal identifiers, and specifies that the unit owners are insured "only with respect to that person's liability." *Travelers Policy* Attach. 2 at 0059. The property coverage portion of the policy does not mention the unit owners. There is no suggestion in the contract itself that Mr. DiMillo was intended to be a third party beneficiary of the policy for purposes of property insurance.

### 3. Relevant Circumstances

This does not end the analysis. Even absent contractual language, it remains possible that the parties intended to benefit Mr. DiMillo. *Devine*, 659 A.2d at 870 ("In the absence of contract language, there must be circumstances that indicate with clarity and definiteness that BIW intended to give an employee such as Devine an enforceable benefit under the contract"). The Court turns to the circumstances surrounding the policy's execution. In doing so, the Court heeds the guidance of the Maine Law Court:

> In assessing the relevant circumstances, courts must be careful to distinguish between the consequences to a third party of a contract breach and the intent of a promisee to give a third party who might be affected by that contract breach the right to enforce performance under the contract. If consequences become the focus of the analysis, the distinction between an incidental beneficiary and an intended beneficiary becomes obscured. Instead, the focus must be on the nature of the contract itself to determine if the contract necessarily implies an intent on the part of the promisee to give an enforceable benefit to a third party.

*Id.*

### a. Nature of the Association

Mr. DiMillo's "circumstances" argument starts with the nature of the Association. *Pl.'s Opp'n* at 7. He observes that he is a member of the Association and that its members consist of all unit owners. *Id.* He notes that the bylaws "force the Association to enter into insurance agreements" and that they provide that the "Board of Directors [of the Association] shall obtain and maintain, to the extent available in accordance with general business practices, insurance on the Condominium buildings and all other insurable improvements upon the land, including both not limited to ***all of the units***. . . . " *Id.* (emphasis in *Pl.'s Opp'n*). He observes that the bylaws "require that a certificate of insurance be issued to each unit owner," that the certificate of insurance show "the relative amount of insurance covering each unit," and that the insurance be paid "through the common expenses that are drawn from each unit owner." *Id.* He concludes that "the Association is authorized to, and in the case of insurance, obligated to, act for its members, including the Plaintiff." *Id.*

Mr. DiMillo then asserts that the Association "attempted to satisfy this obligation by purchasing the insurance policy at issue here." *Id.* He notes that the members paid for the insurance, that the insurance covers all units, and that he was to be issued a certificate of insurance, which named him as an insured and showed the amount of coverage for his unit. *Id.* Mr. DiMillo concludes that he was a third party beneficiary to the Travelers policy. *Id.*

### b. The Underwriting File

In his supplemental opposition, Mr. DiMillo pointed to Travelers' underwriting file to confirm that it intended to cover the interior of the individually owned units. *Pl.'s Supplemental Opp'n* at 3-5. Mr. DiMillo points to a Travelers underwriting visit to the condo unit in October 2005. *Id.* at 3. He says that the underwriting analysis indicates that Travelers "was underwriting a policy of insurance that covered '14 [buildings] with 1-4 units each totaling 40 units', not solely the external portions of the building." *Id.* at 4. He observes that throughout the file there are numerous references to banks and mortgagees as additional insureds to the individual units and therefore "[i]t is clear, then, that those with interests in individual units were third party beneficiaries." *Id.* He contends that in January 2008, Travelers increased the policy limits on the individual units, not on the building as a whole, and the amount of the increase varied among the units. *Id.*

He then argues that the underwriting file reveals: 1) that Travelers considered a sprinkler credit for interior units, 2) that Travelers confirmed that the individual units had hardwired smoke detectors, 3) that Travelers' statement of value for the building was not limited to the exterior of the building, and 4) that Travelers also assessed the interior value of the premises. *Id.* at 4-5. All of these facts, he says, demonstrate Travelers "believed it covered individual unit owners' interests." *Id.* at 5.

He goes on to point out that Travelers' November 2005 Risk Assessment Report states 1) that if the units had to be rebuilt, they would need sprinklers

added, 2) that there was a "moderate" risk of damage to the interior due to water, 3) that the property's insurance to value ratio appeared reasonable, and 4) that damage due to flood was covered. *Id.* at 5. Finally, he observes that the underwriting file "***specifically values Plaintiff's personal property*** at $1,000." *Id.* (emphasis in original).

### c.     The Maine Condominium Act

Under the MCA, a condominium is a legal hybrid with some portions of the building deemed "common elements" and some portions deemed "part of the unit." 33 M.R.S. §§ 1602-102(1), 1602-107, 1602-108. For example, unless the condominium declaration provides otherwise, the "lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished surfaces thereon" are "part of the unit", but "all other portions of the walls, floors or ceilings are part of the common elements." 33 M.R.S. § 1602-102(1). The MCA defines "units" as "a physical portion of the condominium designated for separate ownership or occupancy." 33 M.R.S. § 1601-103(26).

The MCA authorizes the Association to purchase insurance:

(a) Commencing not later than the time of the first conveyance of a unit to a person other than a declarant, the association shall maintain, to the extent reasonably available:

(1) Property insurance on the common elements, insuring against all risks of direct physical loss commonly insured against . . .

(b) The insurance maintained under subsection (a), paragraph (1), to the extent reasonably available, may, and in the case of buildings containing units having horizontal boundaries between them, shall

26

include the units, but need not include improvements and betterments installed by unit owners.

33 M.R.S. § 1603-113(a)(1), (b). The MCA delineates the insurance coverage an Association must provide:

(d) Insurance policies carried pursuant to subsection (a) must provide that:

(1) Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the association;

(e) Any loss covered by the property policy under subsection (a), paragraph (1), and subsection (b) shall be adjusted with the association, but the insurance proceeds for that loss shall be payable to any insurance trustee designated for that purpose, or otherwise to the association, and not to any mortgagee. The insurance trustee or the association shall hold any insurance proceeds in trust for unit owners and lien holders as their interest may appear. Subject to the provisions of subsection (h), the proceeds shall be disbursed first for the repair or restoration of the damaged property, and unit owners and lien holders are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the common elements and units have been completely repaired or restored, or the condominium is terminated.

(f) An insurance policy issued to the association does not prevent a unit owner from obtaining insurance for his own benefit.

33 M.R.S. § 1603-113(a), (b), (d)(1), (e), (f).

### d. The Travelers Policy and the Maine Condominium Act

Mr. DiMillo and Travelers acknowledge that the policy was executed to address the statutory requirements of the MCA. *Pl.'s Opp'n* at 6; *Def.'s Reply* at 4. The policy defines the covered "building" to include personal property owned by the

Association that is "used to maintain or service the building or structure or its premises."[13] *Travelers Policy* at 0057.

### e.     Mr. DiMillo's Association Arguments and the MCA

Mr. DiMillo's arguments about the Association, its bylaws, his membership in the Association, the mandate that it procure insurance, and the certificate of insurance track the provisions of the MCA. That Travelers insured the common elements of the units and covered the individual unit owners for liability purposes, are entirely consistent with the MCA's division of responsibility between the Association and the unit owner. Similarly, that the bylaws entitled Mr. DiMillo to a certificate of insurance showing the relative amount of coverage for his unit is consistent with section 1603-113(b)'s provision that association-purchased insurance may cover the individual units. These facts do not make the Association's insurer the personal insurer for the unit owners, and in fact, the MCA expressly provides that a unit owner may elect to obtain separate insurance "for his own benefit." 33 M.R.S. § 1603-113(f).

Consistent with the MCA, the bylaws state that "proceeds payable as a result of casualty losses sustained which are covered by insurance purchased by the Board of Directors . . . shall be paid to it. The Board of Directors shall act as the insurance trustee." *Notice of Supplemental Filing* (Docket # 32) Attach. 1 at 16 (*Bylaws*); *see*

---

[13] While reviewing the policy, the Court observed that the policy defines "building" to also include certain types of property contained within a unit if the "Condominium Association Agreement" requires such property to be insured. *Travelers Policy* at 0057. The parties did not address this expanded definition of "building" in their briefs or statements of fact. During the May 25, 2011 telephone conference, the Court asked if the expanded definition of "building" applied to the policy at issue. During the June 1, 2011 follow-up telephone conference, Mr. DiMillo expressly waived any claim that the expanded definition of "building" provided a basis to accord him standing. Accordingly, the Court has not considered the expanded definition.

*also* 33 M.R.S. 1603-113(e) (providing that "insurance proceeds for that loss shall be payable to any insurance trustee designated for that purpose"). Indeed, one of the duties of the insurance trustee is to hold the proceeds in trust for the benefit of the unit owners and their respective mortgagees. *Bylaws* at 16. But the insurance trustee is also charged with holding the proceeds in trust for other purposes. *Id.* Notably, "damage to or destruction of the buildings" is to be "promptly repaired and reconstructed" using insurance proceeds. *Id.* at 16-17. Moreover, in certain circumstances, the Board of Directors is barred from distributing proceeds to unit owners prior to the unit owner's mortgagee. *Id.* at 16. Finally, the bylaws provide that "Each unit owner shall be deemed to have delegated to the board of directors his right to adjust with the insurance companies all losses under policies purchased by the Board of Directors." *Id.* at 16. In harmony with the MCA, the bylaws create a system of priority for distributing insurance proceeds that would likely be disrupted if individual unit owners were granted standing to enforce insurance policies purchased by the Association.

Thus, the bylaw provisions are congruent with subsection (e) of section 1601-113, which explains that property insurance proceeds are not directly payable to unit owners. The funds are payable to a trustee who is charged with distributing them for the restoration of the common elements and units, and to the unit owners and lienholders "as their interests appear." § 1601-113(e).

### f. Mr. DiMillo's Underwriting Argument and the MCA

In view of the MCA's contemplated division of responsibility between the condominium association and the unit owners, the Court views as unremarkable that in underwriting the Association, Travelers was interested in whether the units had sprinklers, the names and interests of the unit owners' mortgagees, differences in value among the units, and the other facts Mr. DiMillo asserts reflect Travelers' intention to cover the unit owners. The Travelers policy does insure the "common elements" of the condo so it matters to the insurer whether the units have hard-wired smoke detectors and sprinkler systems since a fire in one unit could destroy the entire building, including the insured common elements. Furthermore, as the insurer of the common elements of each unit, it would be only prudent for an insurer to assess the individual owner's stake in the unit as an owner's interest in self-preservation lessens the risk. The same logic applies to each of the factors Mr. DiMillo presents as evidence of Travelers' intention to insure his personal property. In the Court's view, Mr. DiMillo's factors do not meet the "clear and definite" standard for demonstrating the parties' intention to cover his personal property.

### 4.    Summary:  Third Party Beneficiary

The terms of the policy and the relevant circumstance do not create a genuine issue of material fact as to whether the parties intended to give Mr. DiMillo an enforceable benefit. *Devine*, 659 A.2d at 870. There is no evidence that granting that benefit would effectuate the parties' intentions. Travelers' concern for interior and individually-owned portions of the condominium in underwriting the policy is consistent with coverage of the common elements. To the extent the policy may

cover individual units, neither the language of the policy nor the circumstances evince Travelers' intent to include property damage claims from individual unit owners. To require it to do so could open it up to claims from numerous non-signatories to the policy in contravention of its terms.

Moreover, to grant an enforceable benefit to Mr. Dimillo could well undermine the Association's express intent to maintain control over the distribution of insurance proceeds for policies it purchased. As the MCA and the bylaws make clear, the Association intended to maintain that control even for policies that covered individually-owned property. Accordingly, Mr. DiMillo's evidence that the policy covered individual units is not evidence that the Association intended to grant him an enforceable benefit. He has not presented evidence that the Association is obligated to pay him insurance proceeds or even that individual unit owners were the beneficiaries of insurance proceeds in the past. As such, he has not created a genuine issue as to whether he was a third party beneficiary.

### G. Estoppel

Turning to Mr. DiMillo's estoppel theory, in Maine "[a]n insurer may be estopped from denying coverage when the party claiming coverage has demonstrated (1) unreasonable conduct of the insurer that misleads the insured concerning the scope of his coverage and (2) justifiable and detrimental reliance by the insured upon the insurer's conduct." *Me. Mut. Fire. Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996); *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 272 (Me. 1986); *Roberts v. Me. Bonding & Cas. Co.*, 404 A.2d 238, 241 (Me. 1979). "To withstand a

motion for summary judgment on the issue of estoppel in a case involving insurance coverage, the party claiming the estoppel must present facts tending to show both of these elements." *Me. Mut.*, 674 A.2d at 504.

Mr. DiMillo presented no such facts. First, Maine law requires that there be "unreasonable conduct of the <u>insurer</u> that misleads the insured" and justifiable reliance by the insured "upon the <u>insurer's</u> conduct." *Id.* (emphasis added). In his affidavit, Mr. DiMillo states that upon purchasing his condominium in 2002, he spoke "with <u>Association</u> representatives, specifically employees of the Association's property manager, [MVP] concerning applicable insurance" and that "<u>[t]hose</u> <u>representatives</u> indicated to [him] that [he] only needed to purchase a 'contents' policy for the Condo, as the Association purchased a policy to cover all other losses." *Aff. of Christopher DiMillo* ¶¶ 7-8 (Docket # 19) (emphasis added). Mr. DiMillo makes no mention of any conversations that he had with Travelers about the scope of the Association's coverage that led him not to purchase personal coverage. *Roberts*, 404 A.2d at 241 (to sustain an estoppel claim the insurer's conduct must have induced the insured "to do what resulted to his detriment and what he would not otherwise have done"). To state the obvious, the Association is not Travelers. Nor has Mr. DiMillo provided any evidence that the members of the Association had conversations with Travelers that caused them to mislead him.

Second, Mr. DiMillo's only evidence to support his estoppel theory is that Travelers paid claims for water damage to individual units similar to the water damage to his condo. *Pl.'s Opp'n* at 8; *Pl.'s Supplemental Opp'n* at 6. The issue

before the Court is whether Mr. DiMillo has standing as a unit owner to enforce the policy, and Mr. DiMillo presents no evidence that unit owners, rather than the Association, brought the previous claims.[14]  Furthermore, even if Travelers paid claims from unit owners, Mr. DiMillo does not assert that he was aware before discovery in this litigation that Travelers had done so.  To sustain an estoppel claim, Mr. DiMillo must present evidence that Travelers' conduct misled him.  *Me. Mut.*, 674 A.2d at 504.  As there is no evidence of any conduct by Travelers that would mislead the Association or Mr. DiMillo into justifiably believing that individual unit owners could enforce the policy, Mr. DiMillo's estoppel claim against Travelers must fail.

## III.    CONCLUSION

Because there is insufficient evidence in this record to raise a genuine issue of material fact as to whether Christopher DiMillo has standing to enforce the policy between the Association and Travelers, the Court GRANTS Travelers' Motion for Summary Judgment (Docket # 14).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 2nd day of June, 2011

---

[14] Mr. DiMillo asserts that in 2006 Travelers paid a claim to David McGrillis, but that is not supported in the record.  PSSMF ¶ 1.  Mr. DiMillo cites a claim summary to support his assertion. The claim summary repeatedly lists "Mountainside Phase IX" as the insured and claimant.  *Saksen Aff.* (Docket # 24) Attach. 1.  The only mention of David McGrillis is in the "loss description" where he is listed once as the owner of the damaged unit.  *Id.*  This is not evidence that David McGrillis brought the claim or was paid the insurance proceeds.